UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS and THE TRUSTEES THEREOF,<br><br>      *Plaintiffs*,<br><br>v.<br><br>LLANOS MAINTENANCE SERVICE and MJO DRY WALL CONSTRUCTION LLC,<br>      *Defendants*. | Civil No.: 18-cv-13118 (KSH) (CLW)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on the unopposed motion for default judgment (D.E. 8) by plaintiffs New Jersey Building Laborers' Statewide Benefit Funds and the Trustees Thereof ("the Funds" or "plaintiffs") against Llanos Maintenance Service ("Llanos") and MJO Dry Wall Construction LLC ("MJO") (collectively "defendants"). Plaintiffs initiated this action to recover on a judgment they had obtained in this district against Llanos from MJO, who they contend is liable for paying that judgment. For the following reasons, the Court denies the plaintiffs' motion for default judgment.

**I.    Background**

This action is brought pursuant to Sections 502(a)(3) and 515 of the Employment Retirement Income Security Act ("ERISA"), as amended 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the Labor Management Relations Act ("LMRA") as amended, 29 U.S.C. § 185, to collect delinquent contributions to employee benefit plans and for related relief. (D.E. 1, Compl. ¶ 1.) Plaintiffs allege that defendant Llanos and the New Jersey Building Construction Laborers District Council and Local Unions ("the Union") were parties to a collective bargaining

agreement ("CBA") which required Llanos to makes contributions to the Funds on behalf of employees. (*Id.* ¶¶ 8-9.) Plaintiffs assert that Llanos failed to make the required contributions and subsequently failed to cure the delinquencies despite demand. (*Id.* ¶¶ 11-12.) The dispute was submitted to arbitration on or about January 31, 2018, and on February 2, 2018, the arbitrator issued an opinion and award in favor of the Funds in the amount of $2,957,167.55.[1] The United States District Court, District of New Jersey entered judgment confirming the award on July 16, 2018. (*Id.* ¶ 14 & Ex. A.)

Plaintiffs commenced the present action on August 23, 2018, naming MJO as a defendant along with Llanos, and describing a relationship where the defendants "acted as a single integrated enterprise" and constitute a "single employer for the purposes of collective bargaining operations." (*Id.* ¶¶ 19, 24.) Alternatively, plaintiffs assert that "Llanos and MJO are alter egos of each other and are jointly and severally liable for Llanos's delinquent contributions" under the relevant ERISA provisions. (*Id.* ¶ 25.) In support of their alter-ego theory, plaintiffs allege that defendants shared common ownership, management, interrelated operations, and centralized control of labor relations. (*Id.* ¶ 17.) Specifically, MJO was incorporated in New Jersey in August 2017 with Valeriano Martinez, president of Llanos, serving as a principal. (*Id.*) Both companies perform construction work and MJO has a place of business and operations at Llanos's address, 315 Madison Street in Passaic, New Jersey. (*Id.*) Additionally, MJO "maintains working relationships with certain general contractors who have previously employed Llanos." (*Id.*) Plaintiffs allege that "MJO was created to evade Llanos's obligations under the

---

[1] The complaint states that the award amount is $2,957,167.56, but the judgment entered by Judge Vazquez, U.S.D.J., on July 16, 2018 confirming the award clearly corrects the final digit to be a 5. (Compl., Ex. A.)

CBA," violating the terms of the CBA, which prohibit Llanos, its owners, officers, and agents from operating other business entities to circumvent their obligations thereunder:

> In order to protect and preserve work for the employees covered by this Agreement and to protect the benefits to which employees are entitled to under this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work and benefits, it is agreed that when the Employer performs any work of the type covered by this Agreement at any work site (1) under its own name, or (2) under the name of another entity (whether a corporation, company, partnership, joint venture or another business entity) where the Employer, including its owners, stockholders, officers, directors, or partners, exercised either directly or indirectly (such as through family members or company employees) any significant degree of ownership, management or control, the terms of the Agreement shall be applicable to all such work.

(*Id.* ¶¶ 15, 21.)

Plaintiffs further assert that "substantially all of Llanos's assets were transferred to MJO," and at all relevant times, a continuity of operations existed between defendants. (*Id.* ¶¶ 32-33.) The following allegations underpin this claim: MJO "employed substantially all of Llanos's management and supervisory personnel" and "a part of Llanos's workforce"; MJO "used Llanos's offices, equipment, and machinery"; there was overlap between the general contractors who employed Llanos and MJO; and the defendants "performed the same construction services." (*Id.* ¶ 33.) Thus, plaintiffs conclude that to the extent that Llanos is no longer in business, MJO is a successor employer such that it is liable for their delinquent contributions. (*Id.* ¶ 35.)

Three counts, all pursuant to Sections 502 and 515 of ERISA, comprise the Funds' complaint: the first is for unpaid contributions for the period between December 1, 2015 and March 31, 2017 against Llanos and MJO; the second is for unpaid contributions from March 31, 2017 through the present against Llanos and MJO; and the third is for unpaid contributions from March 31, 2017 through the present, asserted solely against MJO. (*Id.* ¶¶ 22-35.) Llanos and

3

MJO were served a copy of the summons and complaint on September 28, 2018 and October 1, 2018 respectively. (D.E. 4, 5.) Notice of default was entered on November 14, 2018.

On December 28, 2018, plaintiffs filed their motion for default judgment (D.E. 8) against both Llanos and MJO in the total amount of $2,957,167.55, comprised of a principal amount of $1,793,214.34; plus liquidated damages at 20% on delinquent contributions of $358,642.87; interest on principal at 1.5% compounded per month from the date when contributions were due in the amount of $400,999.61; attorney's fees totaling $403,510.73; and the $800.00 arbitration fee. (D.E. 8-3, Aff. of Kimberly Kemple, 2-3.) As of the date of this Opinion and accompanying order, defendants have not appeared in this action or otherwise responded to the complaint or plaintiffs' motion for default judgment.

## II. Standard for Default Judgment

Fed. R. Civ. P. 55(b)(2) authorizes the entry of a default judgment against a properly-served defendant who does not file a timely responsive pleading. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (Kugler, J.) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review,* 922 F.2d 168, 177 n. 9 (3d Cir. 1990)). In ruling on the motion, the Court accepts the complaint's well-pleaded factual allegations as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* at 535-36 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Though "entry of a default judgment is largely a matter of judicial discretion," *id.* at 535, the Third Circuit has "repeatedly [] stated [its] preference that cases be disposed of on the merits whenever practicable," *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 137

(3d Cir. 2017) (citations omitted). Accordingly, when exercising its discretion, the Court "must consider and make explicit factual findings as to the three *Emcasco* factors: '(1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct.' " *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (Simandle, J.) (quoting *Chanel, Inc.,* 558 F. Supp. 2d at 537 (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir.1987))). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly served. *See Baymont Franchise Sys., Inc. v. Shree Hanuman, Inc.*, No. 13-5796, 2015 WL 1472334, at *2-3 (D.N.J. Mar. 30, 2015) (McNulty, J.).

### III. Analysis

#### A. The Court's Jurisdiction

As a threshold determination, the Court must verify whether it has both subject matter jurisdiction over plaintiffs' cause of action and personal jurisdiction over defendants. *Trustees of the N.J. B.A.C. Health Fund v. Bryant Caulking & Waterproofing, Inc.*, No. 15-8359, 2017 WL 784944, at *2 (D.N.J. Mar. 1, 2017) (Kugler, J.). The Court has an "independent obligation to satisfy [itself] of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003). This determination is of "particular concern where, as here, the defaulting party has failed to make any sort of appearance or submit any responsive communication to the Court." *Bryant Caulking*, 2017 WL 784944, at *2.

Here, plaintiffs assert that the present action is brought under sections 502(a)(3) and 515 of ERISA and section 301 of the LMRA "to collect delinquent contributions to employee benefit plans and for related relief," (Compl. ¶ 1), and rely upon three federal statutes for jurisdiction

5

purposes: 28 U.S.C. § 1331 (granting federal district courts original jurisdiction over actions involving a federal question); 29 U.S.C. § 1132 (granting federal district courts exclusive jurisdiction over ERISA claims); and 29 U.S.C. § 185 (granting jurisdiction in the federal district where the labor organization maintains its principal office).

The Court first raised the issue of jurisdiction in its January 9, 2019 order for plaintiffs to show cause "why the within matter should not be dismissed and the remedy sought be pursued by way of a supplemental proceeding based upon the judgment of the district court entered July 16, 2018." (D.E. 9.) Plaintiffs' response asserts that "[i]n *Peacock v. Thomas*, 516 U.S. 349, 357 (1996), the Supreme Court held that although federal courts have ancillary jurisdiction to enforce their own judgments, that power does not extend 'beyond attempts to execute, or to guarantee eventual executability of, a federal judgment.' " (D.E. 10, Pl. Response ¶ 3 (quoting *Peacock*, 516 U.S. 349, 357 (1996).) In other words, district courts do not "maintain 'ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for money judgment on a person not otherwise liable for the judgment.' " (*Id.* (quoting *Peacock*, 516 U.S. at 351).) Plaintiffs further note that in *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 12 (3d Cir. 2008), the Third Circuit "specifically prohibits supplemental jurisdiction over separate actions imposing new theories of liability, including alter-ego and single employer." (Pl. Response ¶ 5.) Plaintiffs conclude that "[b]ecause the Complaint alleges substantive theories to establish liability directly on the part of a third party to the Judgment—MJO—the residual federal jurisdiction from the action against Llanos does not flow to such a claim," and thus, "the relief Plaintiffs are seeking in this action cannot be pursued through supplementary proceedings on the Judgment." (*Id.* ¶ 12.)

The *Peackock* case is relevant to the initial inquiry, but it begs another very critical question: whether this Court actually has subject matter jurisdiction over plaintiffs' complaint. In *Peacock*, Jack L. Thomas filed a class action seeking benefits under Tru-Tech's pension benefit plan against his former employer Tru-Tech, and D. Grant Peacock, an officer and shareholder of Tru-Tech. 516 U.S. at 351. He alleged the defendants breached their fiduciary duties under ERISA. *Id.* The district court found that Tru-Tech had breached its duties and entered judgment against it, but declined to enter judgment against Peacock, ruling he was not a fiduciary. *Id.* After unsuccessfully attempting to collect the judgment from Tru-Tech, Thomas sued Peacock in federal court, claiming that Peacock entered into a "conspiracy to siphon assets from Tru-Tech to prevent satisfaction of the ERISA judgment" and "fraudulently conveyed Tru-Tech's assets in violation of [state] law." *Id.* at 352. Additionally, Thomas asserted a claim for piercing the corporate veil under ERISA and applicable federal law. *Id.* The district court agreed with the latter theory of liability, and entered judgment against Peacock for the amount of the judgment against Tru-Tech. The Fourth Circuit affirmed, "holding that the District Court properly exercised ancillary jurisdiction over [the] suit." *Id.*

Reversing these decisions, the Supreme Court held that because Thomas's "veil-piercing claim does not state a cause of action under ERISA, it cannot independently support federal jurisdiction." *Id.* at 354. The Court concluded that "[b]ecause [plaintiff] alleged no "underlying' violation of any provision of ERISA or ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit." *Id.* at 354.

*Peacock* has been the basis for other decisions finding that ERISA "will not supply the federal courts with subject matter jurisdiction over non-judgment debtors unless the complaint

7

states a direct claim against them." *Bd. of Trustees of Trucking Emps. of N.J. Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *9 (D.N.J. June 11, 2010) (Debevoise, J.). To qualify as a new ERISA claim, the complaint must "allege that a third party was either responsible for commission of the original ERISA violation, or that the third party committed a new and distinct ERISA violation." *Operative Plasterers & Cement Masons Int'l Assoc. Local 8 v. AGJ Constr., LLC*, No. 08-6163, 2009 WL 4796764, at *2 (D.N.J. Dec. 9, 2009) (Bumb, J.) (holding that the court lacked jurisdiction where plaintiffs named non-judgment defendants that did not exist at the time the ERISA violation occurred and failed to plead an independent ERISA claim but instead "simply assert[ed] 'alter-ego' and 'single employer' theories of liability"); *see also Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local No. 14 v. A. Gallo Contractors, Inc.*, No. 07-2870, 2008 WL 942595, at *3 (E.D. Pa. Apr. 8, 2008) (distinguishing cases that have found an alter ego claim to be an independent claim under ERISA as ones that "hinged their reasoning on the direct liability of the alter ego to the underlying ERISA violation").

Plaintiffs' complaint raises three theories of recovery: the single employer doctrine, the alter-ego doctrine, and the successor liability doctrine. None alleges an independent cause of action under ERISA. To begin with, MJO was incorporated "on or about August 9, 2017" (Compl. ¶ 16), foreclosing any possibility that MJO was "responsible for the commission of the original ERISA violation." *Operative Plasterers*, 2009 WL 4796764, at *2. The complaint does not allege, nor do its factual allegations support in any way that MJO committed a new and distinct ERISA violation. To the contrary, the pleadings seek to establish "*not* that the Non–Judgment Defendants committed an ERISA violation, but that they bear liability for the

judgment Plaintiffs already obtained." *Operative Plasterers*, 2009 WL 4796764, at *2.

Plaintiffs' brief in support of their motion for default judgment is explicit:

> Llanos was contractually and legally obligated to contribute to the Funds during the time periods covered by the Audit . . . ; [a]s set forth in the Judgment, Llanos failed to make contributions in accordance with its contractual obligations, and owes the Funds $2,957,167.56. MJO is liable for Llanos's contributions because it is an alter ego or successor of Llanos.

(D.E. 8-2, Moving Br. 5-6.)

Plaintiffs may well have grounds for relief on the basis of imputed third-party liability,[2] but relevant cases have made clear that federal courts' jurisdiction over ERISA claims does not substitute for jurisdiction over non-judgment defendants. As a consequence, their complaint must be dismissed.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion for default judgment is denied for lack of subject matter jurisdiction, and the complaint is dismissed. The Clerk of the Court is directed to close this case, and an appropriate order will be entered.

August 28, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J

---

[2] For example, one court ended its dismissal opinion with this observation: "Finally, we note that the operative deficiency here is only one of *federal* jurisdiction; nothing we have said would preclude the prosecution of an alter-ego claim in state court." *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1037 (10th Cir. 2004).

9